Arlington Specialties, Inc. v. Urban Aid, Inc. Ms. Gikas. Good morning, judges. May it please the Court, my name is Jamie Gikas, and I am representing Plaintiff Appellate, Arlington Specialties. This is a case between two small companies, privately owned, operating in the same niche market, which is a market for personal care kits, portable kits that contain emergency essentials that people, primarily women, might need when they're out and about. My client, which does business as Pinch Provisions, is the leader in this market. They've really helped develop it. They started business in 2004. Their leading product, which is that issue in this case, was launched in 2008. It's called the Mini Emergency, and it's a very cute, small kit that holds 17 emergency essentials. Tiny little bottles of nail polish, hairspray, other things that women might need when they're away from home. Now, they come packaged previously, right? Yes. You buy the whole package. You buy the whole package. You don't have the selection of brands of those various products. No. No. What my client determined was that prior to their entry into this market, which they've developed, women were creating similar things on their own, and the innovation that my client offered was that they actually, instead of women having to throw things together, they developed tiny little versions of products that were already in use and packaged it all into this little kit. Their initial products were in tins and boxes and window bags, and that's what everyone else was using prior to the Mini Emergency Kit being launched in 2008. The Mini Emergency Kit has very different packaging from what was previously in the market. The packaging was selected not for any utilitarian... You're calling it packaging, and that's really an issue, right? Well, yes. Yes, it is an issue here. It's not something you don't throw it away. You don't throw the bag away. You do throw it away, yes. After you've consumed its contents. Correct, yes. What you're selling is the whole collection. Well, yes, it is a collection of goods, and the packaging is necessary to contain it in your purse until the items are used up, but in this way, we feel it is similar to any packaging for a liquid or other product that needs to be held until it's used up. It's actually sold within a plastic container, right? There is an outer plastic container, yes. To protect the product. Yes, correct, correct. Or the packaging. Yes, correct. Okay. Yeah, it's... Could you tell us, Counsel, about the current status of the proceeding before the Patent and Trademark Office? Yes. There were three companion trade dress applications filed. They are currently, all three of them, on appeal. All were denied? They were refused by the Trademark Examiner, not on functionality grounds, which is what is at issue on this appeal. Under the statute, the Trademark Examiner actually has an affirmative duty to consider functionality when reviewing any trade dress application and did not find the packaging to be functional. What the trade dress examiner determined was that he found that there had not been sufficient evidence of secondary meaning. He offered that the applications could be converted to supplemental register, which is reserved for marks that are capable of serving as trademarks once secondary meaning has been established, but he did not feel that the evidence submitted by my client established secondary meaning at this time. That finding has been on appeal. And for one of the applications, some briefing has been submitted. They're still being briefed. Is there opposition? Is there opposition? Yes. The examining attorney submitted... No, no, no. Are competitors participating? No, no. It is strictly an ex parte proceeding with the Trademark Examiner. In the Trademark Examiner's brief, he withdrew several bases for his refusal, and so presently at least one of the companion applications is on remand and we're still trying to work out. It looks like that one probably will go through. The one that is most relevant to this proceeding is the pouch by itself, and that is still in the process of being briefed. The pouch costs more than the alternatives, I think you probably said. It does. So this is something for, is it wrong to say fancy folk or something like that? The product retails between $14 to $16, so it's not incredibly expensive, but it does cost, this packaging option does cost significantly more, and Pinch Provisions chose it because they thought in part it was cute and also that it gave a premium feel and would catch attention on store shelves. And in fact, there's evidence in the record, the product is sold most frequently at Sephora, which is a major beauty chain, and for years and years now it's been one of their best-selling products, and it sits right next to the register where every customer who goes into a Sephora is likely to come across it. Well, it's an impulse thing then. You need to buy it for presents for other people, things like that? I think it's primarily used as a gift, yes, and in fact my client's biggest season is the holiday season, which we're just about to enter right now, yes. Because most people don't buy something you're going to throw away. Well, I think. I mean, it's really, that's what I found very intriguing about it. I have very limited exposure. My wife never heard of it, my legal assistant never heard of it, but apparently they sort of look at it like that's not, you know, that'd be kind of neat, you know, to throw in their purse instead of having to dig through the whole mess to find one of those little things. That is exactly what it is intended for. In fact, the fans of the brand are very, very vocal about their appreciation. There's been, you know, more than 500 million consumer impressions on social media. The product is really, it is useful, but you do in fact throw it away when you use up the little items inside, and many of them are so tiny, you know, there's a single deodorant wipe or a single stain remover wipe. So they do get used up, and then you buy a new kit. Some people do buy them for themselves. They're often given as gifts at Christmas or holiday season or for bridesmaids is a big part of their business as well. Bridesmaids. Yes. So plaintiff advertises it as the, quote, perfect little pouch, right? Yes. What's perfect about it? It's really just that it's cute, and it's offered in a variety of eye-catching colors and fabrics. I will say the client received, my client has received over the years, many, many complaints about the lack of utility in the pouch. People complained, and this is true. Although it has a cute little shape, the squat size of it, it doesn't fit well in a wallet or a smaller purse or a pocket. I've never heard a party to litigation criticize its own product as much as we see in the brief here. But let me get right to the point, if I could, about this line of questioning. Sure. You point out there are also flat metal tins, clear plastic bags, flat cloth pouches or soft pouches as alternative designs. And it would seem to me that all of those options, including your clients, have different advantages and disadvantages. I think that would be correct. I think that the pouch that's at issue here probably has the fewest utilitarian advantages. Well, if what you're looking for is a compact thing to tuck into a corner of a suitcase or a purse, maybe that works. But let me take the point further to our decision in the specialized seating case, which, frankly, seems to me to control this. Namely, we've got a lot of different ways that you and your competitors can wrap these different products together into one big product for the convenience of the consumer. Each shape and style, in essence, as in the seating case, represents a different solution to choices, different advantages, different disadvantages. And in specialized seating, that tells us it's functional. I disagree, Your Honor, and let me explain. I don't think specialized seating controls here. First of all, specialized seating involves an expired utility patent. And as this court pointed out – There's no way you could have gotten a utility patent on this product, is there? Exactly, exactly. Because it was so obvious, so well-known, so generic. It wasn't chosen for utilitarian reasons. Okay, I interrupted you. Go ahead. As this court summarized in 2011 in Georgia-Pacific, specialized seating and Jay Franco v. Frannich were about one thing, which is the intersection between patents and trademarks. And they held that if you have an expired utility patent, as well as if you have advertising touting utilitarian benefit, which was at issue in both Georgia-Pacific and the Jay Franco v. Frannich case, that is evidence of utility, and you don't need to go further and look at alternative designs. What Judge Easterbrook held in specialized seating is that, yes, this chair was created not because it looks better this way or to catch consumer attention, but because it's just a way of solving a problem. The evidence here shows that this pouch was not chosen as a way to solve a problem, and, in fact, it created multiple problems that my client ultimately had to design a separate product to address because people complained it doesn't fit. You can't access the contents without opening up the pouch and pulling everything out and rifling through it. You can't see the contents until you pull everything out. Those are all detractions from this particular package. So my client designed another product that fulfilled the need that actually does have functional benefit. So it's a terrible product. It's not a terrible product. It is a very cute product. Does this present us with the problem, then, of aesthetic functionality? Take, for example, the Honeywell thermostat, where Honeywell was trying to get the exclusive rights to round thermostats. Right. Aesthetic functionality is not something that has been at all raised in this case, and I'm not prepared. I mean, I'm aware of the concept and the doctrine, of course, but I don't know that this court has come down on it, clearly or not. It's been a widely criticized doctrine. It's unclear whether it still is valid, and if that's something that you would like to hear more about, I would be happy to submit a supplemental briefing on that. Well, apparently, you've created another – not you. The company's created another product. Yes. A see-through product. It's not see-through. It's flatter. It's flat and more compact, and it has a flip-up lid where the contents can more easily be accessed. They can be viewed easily. But it's not as cute. It's not as cute. You can hide it in your purse. Right. Counsel, go ahead. I'm just trying to look at what this – what the design is, one that fits in the palm of the hand, which at least shows the size of it, which is pretty small, and then has a zipper on top. It does. Which is about the only way you could open it. Correct. And that's where it gets into generic. And what else are you going to do if you're going to have something like that? And I guess that's part of their argument. But you would disagree with that, that this is unique and therefore should stand alone. I would disagree. Sure. It does have some function. But as Judge Plum's opinion in Abbott Labs, which I think is the most on-point opinion from this court, pointed out, 1992, just because you have some function and there's some utility to a product, that doesn't mean it's functional for purposes of trade dress law. That was, however, long before Trafix. It was, but I don't know that Trafix had any negative impact on Abbott Labs because Trafix, again, was related to what happens when you try to extend patent protection via trade dress law. You said when your client started in 2004, you were using flat metal tins. Yes. Could you have claimed that as trade dress? I don't think so, no. Why not? Well, I think that they were an obvious solution to a problem, which is we need something to be in. And a mini-dop kit is not an obvious solution? I mean, you're talking there about another trademark that's so well-known that it may be generic at this point. I disagree. I think they're very different. I think there are distinct utilitarian benefits to a tin, specifically that it protects, it's rigid, and it protects the kit contents. It can't be deformed during packaging or when carried around in someone's purse. And, in fact, my client offers a product in a tin, continues to do so. It seems to be that's like saying that all rigid-sided luggage is better than soft-sided luggage. Well, you raise a good point. There are advantages and disadvantages to each, right? You raise a good point there because rigid-sided luggage is a product. So there we're talking about product design, and here we're talking about packaging design, and there's a different standard applied to the two when you're looking at trade dress protection. And, again, at this case, the heart of what's on appeal here is functionality, and the question for functionality is whether or not competitors need this in order to compete. No, the question is whether it affects cost or quality as an alternative to necessity, right? Well, it collapses into affecting cost or quality is really a question of whether or not it would raise the cost or decrease the quality so much to have another packaging option that competitors could compete. It sounds like you're rejecting the answer the Supreme Court gave in traffics. I am not. That competitive necessity is not the standard. I don't read traffics that way. What the Supreme Court said in traffics is if you've already claimed utilitarian benefits in a utility patent, even if competitors could design around it, you picked your horse, you rode it, which is you tried to get a patent, you touted the utility in order to obtain that patent. And at the end of the opinion, whether a utility patent has expired or there has been no utility patent at all, a product design, which has a particular appearance may be functional because it is essential to the use or purpose of the article or affects the cost or quality of the article, right? I agree with that, yes. So necessities need not be shown. Competitive necessity, well, affecting cost or quality, here the packaging is actually more likely to cause damage to the contents and cost more. Could I nod your red lights on, but I want to keep this for a minute, because you brought up this idea, you know, you talked about luggage. I never was much of a traveler, and I don't do it anymore. You've got to stand too many lines and that sort of thing. But suppose you had some luggage that looked so obnoxious, it would never get mixed up with everybody else's when they're all trying to stand in line and find out which one comes running around on the thing. That would be strictly for the, what, packaging? What would that be? It doesn't matter what's in it. It always puts the same junk in it when you travel, but it's one that stands out and it has a purpose. I think that would be product design, and whether or not a manufacturer of that very garish luggage could argue that there was lack of functionality, that the garish design wasn't necessary, I don't know. That would be on the facts of the case. Well, no, they're necessary in order to find it when it's a whole bunch of other suitcases going by. Sure. Well, the argument would be that it's not necessary because luggage has never been designed, you know, primarily it's in very boring basic colors. But I think there could be an argument, product design, trade dress would apply there, especially if there was a very distinct pattern. It wasn't that they were just claiming the garishness in general, but if they were claiming a distinct pattern that was eye-catching, that could be trade dress protected, yes. Okay. Thank you. All right. Mr. Nero. May it please the Court. I am William Nero. I'm here representing the defendant, Apple Lee, urban aid. Your Honors, a product whose design is primarily dictated by its functionality is not entitled to protection under the trademark law. It's not entitled to protection under the design patent law. It's not entitled to protection under copyright law. This case boils down to really a determination by the court whether the plaintiff's product design is primarily dictated by its function. Now, on the undisputed facts, the trial court correctly determined that the shape of the pinch product's pouch, bag, is essential to its use and purpose, that is, to hold things. And therefore, its design is dictated by that function. Now, the plaintiff tried to assert that there's some specific element of this bag that might be protectable. This tuck and folded corners is distinctive. But those are commonly known elements that have existed since 1919 when the Dopp kit was first produced. It became ubiquitous. The Dopp kit became ubiquitous in World War II. It was given to all the soldiers going off to war. And that Dopp kit, as most people know, is essentially a bag with a zipper on the top that holds whatever. Counsel brought up an issue about this packaging to hold their goods. Well, it's been a long time in existence. First aid kits were packaged this way, in a soft pouch with a zipper that comes over the top. Your Honor said he didn't travel much, but if you travel internationally, at least years ago, every airline gave you a little soft package kit with a zipper on the top that had a toothbrush and some toothpaste, some lotion, a mask. And those things were common in the industry. Personal care kits and women's cosmetics are all packaged in this same way, in small, maybe not as small as this mini-emergency, but small kits that fit in a woman's purse or in a suitcase or in a carry-on bag. Well, who was it that said that they rejected the first design and said they wanted it just like, I guess, did they call it a pinch bag? They said they wanted it like that one? I don't remember the exact quote. I'm not sure what reference you're making. Well, I'm referring to whoever was looking for this design for the product and rejected it. I'm sorry, I don't have where that is in which brief. The evidence of copying? Oh, evidence of copying? I think that's what the question is about. I'm not sure what that's referring to. There was evidence that the defendants copied it? Well, evidence that somebody took it for the purpose to copy it. I guess that's a better way of putting it. Well, even if a person were to copy a functional design, they're entitled to do that, because the law doesn't protect products whose design is functional. I mean, just take an ordinary cylinder that houses a liquid. If it's a cylinder, a person would say, well, I want to copy that cylinder. There's nothing unique about that cylinder. It's dictated by its functionality, and therefore you're entitled to copy it. You're entitled to copy things that are not protected by copyright law. You're entitled to copy designs that are not protected by trademark law. There has to be something unique and distinct about packaging, something unique and distinct about product designs that give them this distinctiveness. The key is distinctiveness. A Coca-Cola bottle holds Coca-Cola. It doesn't have to be in that shape. So that distinctive design becomes identifiable trade dress. Everyone knows what the source of that product is. It's Coca-Cola Company. In a situation like this, it's a bag. It's essentially a bag. It's a Dopp kit, configured a little bit differently. Interestingly, in the trademark proceedings that the plaintiff is now attempting to appeal, they disclaimed the zipper, so they were left with only a bag, a small bag. What do you mean they disclaimed the zipper? It's being unique, you mean? Yeah, what you have to do before the trademark office to get protection for designs is you have to describe what the nature of the design is. And so they say it's a spheroid pouch with this and that. But we disclaimed the zipper. Zipper on top. Zipper on top, yeah. That's surprising to me. I'm not sure why they would do that, but that's what they did. Essentially, whatever they have claimed as some unique design feature is indeed functional. The fold and tuck corners are to keep the bag from collapsing, as anybody that has a Dopp kit understands. Pinch Products seems to have changed their theory, I think, in this appeal. At first they said this is a pouch, a unique design of a bag and a pouch. And now they seem to be saying, well, it's not really a pouch, it's packaging. And I can't quite understand whether they're claiming that the pouch is a package or that this clear plastic box that they put the pouch in is the package. If they are claiming that that clear plastic box is their design, excuse me, their ornamentation, that's even weaker than the claim that the box itself, or excuse me, that the bag itself. I don't think that's what they're arguing. It was a little bit unclear. In the court's opinion on the appendix, page 3 of the appendix, the court set out the product, the plaintiff's product. There's a clear plastic box, and then there's two of these kits. But either way, if they're making a claim that that clear plastic box is distinctive, there's less merit. I think the argument is simply that, I mean, the pouch with its contents kind of straddles the notion of packaging versus product design in trade dress. The Supreme Court, if I read it correctly, told us basically err on the side of treating it as product design in the Walmart case, but it's not that clear. Right. I think one of the points that counsel made was that there were problems with this bag, and so they redesigned it. And that goes to the heart of functionality. They designed the bag to function better, to function appropriately to solve the problem. No, they're saying they designed it to make it worse. So why doesn't Ms. Kaplan's affidavit present a genuine issue of fact here when she talks about how much worse and less functional the product design is? It's the flip side of that, Your Honor, is that that shows that the design is dictated by its functionality. The problem that they solved was solved by making a functional change in the package itself, not an ornamental design or some feature that would make it distinctive. They were solving a technical problem of containing the products and making it in a size that it would be more useful and perhaps saleable. So I don't see the affidavit as supporting an argument that it's not functional. I think it supports the argument that it is functional. Well, go ahead. The plaintiff, I believe, is a bit desperate in making claims that no utility patents prove that it's nonfunctional. Well, I think that claim is just patently wrong. There are utility patents extending back to 1937 on travel kits, travel cases, that clearly define and describe the utilitarian aspect of zippered pouches containing things. And I think the court was correct when it noted that the reason that there aren't utility patents, more utility patents on this fundamental design is there's nothing new, novel, or non-obvious about this product that would entitle it to a utility patent. Counsel, could you tell us what you think the significance is, if any, of the plaintiff's claim that the design is, quote, cute with respect to functionality or trade dress protection? Yeah, I think cute is a subjective conclusion. I don't think cute rises to the level of protection under trademark law. I think there has to be some feature, something that makes it unique. I think Your Honor raised the issue of ornamentation on a bag. Ornamentation can possibly. Of course, but if it's not functional, then you could get into secondary meaning, right? I mean, the Honeywell thermostat case had a fair amount of evidence of secondary meaning. But I wonder, though, about the round beach towel case, the Jay Franco, and the seating case, as to where aesthetic appeal winds up fitting into functionality analysis. Yeah, I think the way it's stated is if the design is dictated primarily by its function, then it cannot, in that configuration, entitle a person to exclusive rights in the market. The easy solution to all of these problems is to brand the product. If you look at Louis Vuitton bags, they've got the UV thing all over it. If you look at a lot of the designer packaging, they put little brands on the zippers, Ralph Lauren or whoever it would be. So there is, as Judge Easterbrook pointed out, they're not without a remedy. All they have to do is put the brand on it. Now the brand, Pinch Products, PP, whatever it would be, becomes the significant trademark product, or excuse me, source-identifying feature of that product. It's not relying on uniqueness of design to say that this is a trade dress worthy of the protections of the Trademark Act. You're not claiming competitive necessity for this, are you, given the available other designs? No, not at all. We have a situation where you have a bag that contains products. It could contain any number of products. You could take the bag, dump out the contents, and put your own products in there, if you wished. But the bag is a bag is a bag. It's a top kit. And there's nothing in that design that would qualify for protection as trade dress, which really is trademark, which is a source identifier. That's what the consumer relies on when they see that brand. The source of that product is Coca-Cola. The source of that product is Ralph Lauren. The source of that product is Louis Vuitton. The source of that product is Johnson & Johnson First Aid. A First Aid kit in an unmarked bag, no one would even know. You can't determine that that's a First Aid kit simply by looking at the configuration of the First Aid kit. It has to have some brand identifier in order to give it that, rise it to the level of protectable trade dress, trademark, under the trademark laws. Well, I was curious a little bit about the display. She said something about when you're at the checkout counter, you see something like that. Is it, at that point, wrapped in plastic? I think it is sitting on the counters in that plastic box. So it's hiding the uniqueness of it, then? It would seem so, yes. And the way they're doing it now is they put their brand on that box. So it's on the outside of that box. I think exhibit, or excuse me, page three of the opinion shows it there. And they have received trademark protection for the name, the word mark, as affixed to that box. And that's what, without that word mark on the outside, what you have is a clear plastic box with an unidentified pouch inside and sitting on the counter for an impulse buy. That's what, that's why they put things at the counters there. They're called impulse buys. You're standing in line waiting to get a look at it. You say, oh, yeah, this is something I could probably use. That's when you know you forgot to give somebody a present. I was going to say that, too. Yeah, it's the impulse buy. So, in conclusion, the plaintiff's designs simply do not function as a source identifier. It's a common shape. It's a common design. Since 1919, the Dopp kit has proved that. A bag, a package designed to hold toiletries, is simply functional and not entitled to trademark protection. We believe the district court was right. The defendant, Appleby, asks that this court affirm the decision. Thank you, Mr. Neal. Ms. Gigas? Your time has expired, but you may have two minutes. I will go very quickly. Counsel started by saying this is product design. Again, this is packaging design. And you don't have to take my word for it. You can take the word of Urban Aid's principal and DSW, the customer that purchased. In the record, there's an email exchange where they talk specifically about the packaging. And DSW says, we don't care so much about what's inside. We care about the packaging. They refer to the pouch repeatedly as packaging. So that's not my client with its own affidavit asserting that this is packaging. This is actually two other industry insiders, a competitor and a customer, who also agreed that this is packaging. Counsel repeated over and over that this thing is a Dopp kit. It's not. It's not a Dopp kit. A Dopp kit is a sturdy travel container sold for the purpose of containing your goods when you travel. This package is a small, much thinner, much less sturdy package designed to hold some emergency essentials and be disposed of when those goods inside are used up. It's the same as in the record we included evidence of other trade dress registrations for makeup, lipstick containers, lip balm containers, makeup containers, perfume bottles. Just because a perfume bottle or makeup container resembles a flower or an ice cube or a tablet does not mean it is any of those things. This packaging undeniably resembles a Dopp kit, but it is not a Dopp kit and it is not sold for that purpose. What is being sold are the goods inside, and this is just a cute way of containing it. Lastly, I want to note that there's a lot of talk about the outer packaging and whether that's really the packaging or the pouch is really the packaging. In the record, there's tons of evidence regarding the fact that the inner pouch is what is always featured in coverage, media, press, social media, unsolicited coverage. There are just hundreds of millions of impressions that consumers have of the pouch by itself, which is why my client separately applied for a trade dress application to protect the entire configuration with the outer and inner packaging and separately the pouch packaging. This is the same in any cosmetics case where you have a makeup or a lipstick compact that is sold. There's inner packaging to hold the product you're really buying, which is the makeup. There's also outer packaging to protect the inner package at point of sale. It doesn't mean that one is the packaging and there's not another. You can have two forms of packaging. Ms. Gigas, is there anything in the record to indicate whether the small pouch with the zipper is retained? In other words, do some women, because of its indestructibility, if there is such a thing, I mean, obviously it could be destroyed, but retains it for keeping buttons or paper clips. I mean, is there anything to indicate that it's retained? No. There is no evidence to indicate it is retained. There is evidence to indicate it is disposed of coming from Ms. Kaplan. And, in fact, I think that the client sales, they have thousands and thousands, if not millions, of repeat customers indicate that people are using these up, and then they're buying new ones the next year, which would indicate that they're not being retained. Well, you have a lot of exterior design variations, too, right? Sure, sure. So the next one you can get is different, different color, different this and that. Yes. And they've also sometimes offered packaging that will match a specific collection. For example, at J.Crew that year, they'll sell things that are in the same colorway that J.Crew's clothes are so that it looks nice in the store and blends with everything. The one other thing I wanted to point out is that counsel talked a lot about utility patents and first aid kits. None of this was in the record. While it may be possible that there are utility patents that would cover this, the defendant did not identify any utility patents and put them in the record. So it's just conjecture at this point. And I think what is in the record shows that there's enough there that this is a question of fact that should have gone to the jury. Thank you, Mr. Davis. Thank you, Mr. Merrill. The case is taken under advisement.